## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| US FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REMCODA, LLC, a New York limited | ) | Case No. _____ |
| liability company; and REMCODA, LLC, a | ) | |
| Florida limited liability company, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## **COMPLAINT**

Plaintiff, US Food, Inc. ("**USF**"), by its undersigned attorneys and for its Complaint against

Remcoda, LLC, a New York limited liability company ("**Remcoda NY**") and Remcoda, LLC, a

Florida limited liability company ("**Remcoda FL**"), states as follows:

### **The Parties**

1.      USF is a corporation organized and existing under the laws of the State of

Delaware with its principal place of business in Rosemont, Illinois.

2.      Remcoda NY is a New York limited liability company with its principal place of

business in New York, New York.  Upon information and belief, and based on recent allegations

made by Remcoda NY in other litigation filed by Remcoda NY in this District, Remcoda NY's

members are citizens of New York, Florida, and California.

3.      Remcoda FL is a Florida limited liability company with its principal place of

business in Sunny Isles Beach, Florida.  Upon information and belief, Remcoda FL's members

are citizens of New York, Florida, and California.

4.     In July 2022, Remcoda NY merged with Remcoda FL.  Upon information and belief, Remcoda FL is the successor-by-merger to Remcoda NY, and one or both of Remcoda FL and Remcoda NY are liable for the conduct alleged in this Complaint.  (Remcoda NY and Remcoda FL are hereinafter sometimes collectively referred to as "**Remcoda**").

## Jurisdiction and Venue

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(c)(1), because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.00.

6.     This Court has personal jurisdiction over Remcoda because Remcoda NY's principal place of business is in New York, and Remcoda has continuous and systematic business contacts with New York by providing services throughout the state, including through an office and showroom in New York, as indicated on Remcoda's website.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to USF's claims occurred in New York, where Remcoda is headquartered.

## Facts

8.     USF is one of the largest food service companies in the United States, providing approximately 300,000 restaurants and foodservice operators with food and foodservice supplies.

9.     At the beginning of the COVID-19 pandemic in spring and summer 2020, USF undertook an effort to source Nitrile gloves to sell to and otherwise accommodate the needs of its customers.

10.     Nitrile is waterproof, greaseproof, oil proof, and resistant to a range of common chemical and substances.

11.     During the COVID-19 pandemic, Nitrile gloves were in high demand, including in the foodservice industry.

12.     Remcoda bills itself as "a leading supplier of PPE, health & wellness and medical supplies to the food service, industrial, healthcare and retail industries."

13.     In mid-2020, USF began discussions with Remcoda about purchasing a large quantity of Nitrile gloves, which USF planned to make available to its foodservice customers for purchase.

14.     During these discussions, USF made clear to Remcoda that USF wanted to purchase only Nitrile gloves, and not vinyl gloves or gloves made of any other material.

15.     Remcoda understood USF's requirements and indicated that it could supply USF with Nitrile gloves in the necessary quantities.

16.     In August 2020, USF and Remcoda entered into a vendor agreement (the "**Agreement**"), which applied to all products purchased from Remcoda by USF.  (A true and accurate copy of the Agreement is attached hereto as **Exhibit A**).

17.     Pursuant to Section 1 of the Agreement, Remcoda confirmed receiving and reviewing, and agreed to be bound by, USF's Vendor Policy.  (A true and accurate copy of the Vendor Policy is attached hereto as **Exhibit B**).

18.     Pursuant to Section 1 of the Vendor Policy, Remcoda agreed that the Vendor Policy would apply to all products purchased from Remcoda by USF.

19.     Pursuant to Section 3 of the Vendor Policy, Remcoda agreed that USF would submit purchase orders to Remcoda for products that USF wanted to purchase from Remcoda.

20.     Pursuant to Section 2 of the Vendor Policy, Remcoda agreed to deliver products to USF that correspond to the products ordered (by SKU) in the applicable purchase order submitted by USF.

21.     Pursuant to Section 6 of the Vendor Policy, Remcoda represented and warranted, *inter alia*, that all products sold to USF would conform to the applicable specifications and be fit and sufficient for the purpose for which it was intended.

22.     Pursuant to Section 8 of the Vendor Policy, Remcoda agreed that USF could reject non-conforming products and dispose of, return, or hold non-confirming products at Remcoda's expense and risk.  Remcoda further agreed that USF could require Remcoda to grant USF a full refund for any non-conforming products.

23.     Between September 2020 and March 2021 USF submitted at least 27 purchase orders to Remcoda (the "**POs**").  (The Agreement, the Vendor Policy, and the POs are sometimes hereinafter collectively referred to as the "**Contract**").

24.     Each of the POs specified that USF was ordering Nitrile gloves.  (A true and accurate copy of a representative PO is attached hereto as **Exhibit C**).

25.     USF ordered approximately 79,000 cases of Nitrile gloves (totaling over 79 million gloves) from Remcoda through the POs, or through subsequent agreed modification of the POs.

26.     Remcoda delivered the gloves to USF in several shipments over the course of several months.

27.     Remcoda delivered the gloves to USF in packaging that identified the gloves as Nitrile gloves.

28.     Remcoda sent invoices to USF, which also identifies the gloves delivered as Nitrile gloves.  (A true and accurate copy of a representative Remcoda invoice to USF is attached hereto as **Exhibit D**).

29.     USF paid Remcoda approximately $10 million to Remcoda for the Nitrile gloves.

30.     After receiving the gloves from Remcoda, USF began selling and distributing the gloves to USF's foodservice customers.

31.     USF later had reason to test to confirm that the gloves were, in fact, Nitrile and provided a sampling of the gloves to two independent, third-party testing facilities, which performed several tests on the gloves to determine whether the gloves were Nitrile gloves or gloves made from a different material.

32.     USF paid for this independent testing.

33.     This independent testing confirmed that every glove provided in the sampling was a highly-plasticized Polyvinyl Chloride, also known as "vinyl" or "stretch vinyl" gloves.  None of the gloves provided in the sampling was a Nitrile glove.

34.     USF promptly notified Remcoda of these test results and, pursuant to Section 8 of the Vendor Policy, requested a full refund for all gloves provided by Remcoda.  USF also indicated that it wanted to promptly return all of the gloves to Remcoda.

35.     At Remcoda's urging, USF submitted several more randomly selected samples of the Remcoda-supplied gloves for additional independent testing with the same results – none were Nitrile gloves.  USF incurred additional costs for this requested testing.

36.     To date, Remcoda has refused to allow USF to return the gloves and has refused to refund any amounts for the gloves.

37.     In the meantime, USF has incurred additional costs, losses, and expenses associated with, *inter alia*, handling, transporting, and storing of the gloves.

38.     Pursuant to Section 14(j) of the Vendor Policy, USF attempted to resolve this dispute with Remcoda, but those attempts were not successful.

## Count I
### (Breach of Contract)

39.     USF incorporates Paragraphs 1 through 38, as if they were fully set forth herein.

40.     USF fully performed each of its obligations under the Contract.

41.     Remcoda breached the Contract by failing to deliver to USF the Nitrile gloves specified in the POs and instead delivering vinyl gloves that did not meet USF's specifications.

42.     Remcoda further breached the Contract by refusing to refund USF for the non-Nitrile gloves and refusing to allow USF to return the non-Nitrile gloves.

43.     As a direct and proximate result of Remcoda's breaches, USF suffered various monetary damages, including, *inter alia*, (a) the approximately $10 million USF paid to Remcoda for the gloves, which Remcoda has refused to refund; and (b) the additional costs, losses, and expenses USF incurred for the independent testing and in handling, transporting, and storing the gloves, after Remcoda refused to allow USF to return the gloves.

WHEREFORE, USF prays for the following relief:

    A.  That the Court enter judgment in favor of USF and against Remcoda;

    B.  That the Court award USF compensatory damages against Remcoda in an amount to be determined at trial;

    C.  That the Court award USF prejudgment interest on the aforementioned compensatory damages against Remcoda in an amount to be determined at trial;

D.  That the Court award USF its costs of suit and such other legal and equitable

relief against Remcoda that the Court deems just and proper.

Dated: New York, New York                    Respectfully submitted,
       November 11, 2022

                                              BAKER & HOSTETLER LLP


                                              By:    /s/ Torello H. Calvani
                                                     Torello H. Calvani
                                                     tcalvani@bakerlaw.com
                                                     45 Rockefeller Plaza
                                                     14th Floor
                                                     New York, NY  10111
                                                     Telephone:   212.589.4200
                                                     Facsimile:    212.589.4201

                                                     John S. Letchinger
                                                     (*Pro Hac Vice Pending*)
                                                     jletchinger@bakerlaw.com
                                                     Matthew J. Caccamo
                                                     (*Pro Hac Vice Pending)*
                                                     mcaccamo@bakerlaw.com
                                                     One North Wacker Drive
                                                     Suite 4500
                                                     Chicago, IL  60606
                                                     Telephone:  312-416-6200
                                                     Facsimile:  312-416-6201

                                              *Attorneys for US Foods, Inc.*