UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

US FOODS, INC.,

                        Plaintiff,

            -against-

REMCODA, LLC, a New York limited liability
company; and REMCODA, LLC, a Florida limited
liability company,

                        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   3/15/2024  

22 Civ. 9663 (AT)

**ORDER**

ANALISA TORRES, District Judge:

      Plaintiff, US Foods, Inc., brings this action against Defendants, Remcoda, LLC (New York)

and Remcda, LLC (Florida) ("Remcoda"), alleging that Remcoda breached the parties' contract and

warranties by failing to deliver the nitrile gloves that US Foods ordered.  Am. Compl. ¶¶ 48–52, ECF

No. 24.  Remcoda moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  ECF No. 36; *see* Def. Mem., ECF No. 38.  For the reasons stated below, Remcoda's motion

is GRANTED in part and DENIED in part.

## BACKGROUND[1]

      US Foods, a Delaware corporation with its principal place of business in Illinois, is one of the

country's largest food service companies.  Am. Compl. ¶¶ 1, 8.  At the beginning of the COVID-19

pandemic in the spring and summer of 2020, US Foods sought out nitrile gloves to sell to its

customers in the food service industry.  *Id.* ¶ 9.  Nitrile gloves—an alternative to latex or vinyl

gloves—are ideal for food service workers because they are "waterproof, greaseproof, oil proof,

resistant to a range of common chemical[s] and substances, puncture resistant, hypo-allergenic,

durable, and form-fitting."  *Id.* ¶ 10.  The gloves were in high demand during the pandemic.  *Id.* ¶ 11.

---

[1] The following facts are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

Remcoda is "a leading supplier of PPE, health & wellness and medical supplies to the food service, industrial, healthcare and retail industries."[2]  *Id.* ¶ 12.  In mid-2020, US Foods began discussing a large purchase of nitrile gloves from Remcoda.  *Id.* ¶ 13.  US Foods "made clear to Remcoda that [it] wanted to purchase only [n]itrile gloves, and not latex gloves, vinyl gloves, or gloves made of any other material."  *Id.* ¶ 14.

In August 2020, US Foods and Remcoda entered in a vendor agreement (the "Agreement"), which applied to all products to be purchased by US Foods from Remcoda.  *Id.* ¶ 16; *see* Agreement, ECF No. 24-1.  Under the Agreement, Remcoda agreed to be bound by US Foods's vendor policy (the "Policy").  Am. Compl. ¶ 17; *see* Policy, ECF No. 24-2.  The Agreement and Policy are governed by Delaware law.  Policy § 14(f).  The Policy specifies that US Foods would submit to Remcoda purchase orders for specific products, identified by stock keeping unit numbers ("SKUs"), and Remcoda would deliver the corresponding products to US Foods.  Am. Compl. ¶¶ 19–20; Policy §§ 2–3.  Under the "Warranties" section of the Policy, Remcoda warranted that all products sold would "conform to the applicable specifications" and "be fit and sufficient for the purpose for which [they are] intended and/or which is stated on any packaging, labeling or advertising."  Policy § 6(a).  Remcoda also agreed "any shipment found to be in violation of the above representations and warranties may be rejected by [US Foods] and may, in addition to other remedies, result in immediate termination" of the Agreement.  *Id.* § 6(c).  And, Remcoda agreed that US Foods could reject nonconforming products and require Remcoda to replace them or offer a refund.  *Id.* § 8.

US Foods submitted at least twenty-seven purchase orders for nitrile gloves—totaling about 79,000 cases of gloves—to Remcoda between September 2020 and March 2021.  Am. Compl. ¶¶ 25–27; *see, e.g.*, ECF No. 24-3.  Remcoda delivered boxes of gloves identifying their contents as nitrile

---

[2] US Foods names two entities—both called Remcoda, LLC—as defendants; one is a New York LLC and the other, a Florida LLC.  *Id.* ¶¶ 2–3.  The entities merged in 2022.  *Id.* ¶ 4.

gloves, along with documents purporting to certify that the gloves were nitrile.  *Id.* ¶¶ 29–30.  US Foods paid Remcoda around $10 million for the gloves and began selling them to food service customers.  *Id.* ¶¶ 32–33.

US Foods "later had reason to test to confirm that the gloves were, in fact, [n]itrile."  *Id.* ¶ 34.  In September 2021, US Foods provided samples of the gloves to two third-party testing facilities.  *Id.* ¶ 35.  Each tested glove turned out to be "highly-plasticized Polyvinyl Chloride, also known as 'vinyl' or 'stretch vinyl' gloves."  *Id.* ¶ 37.  None of the tested gloves were nitrile.  *Id.*

US Foods received the test results in October 2021.  *Id.* ¶ 40.  In early November 2021, US Foods "notified Remcoda of these test results, revoked acceptance of the non-conforming gloves," indicated that it wanted to return the gloves, and requested a full refund.  *Id.* ¶ 41.  US Foods and Remcoda "discussed the test results, and the non-conforming nature of the gloves, both in writing and by telephone, several times."  *Id.*

Remcoda has refused to retrieve the gloves or refund US Foods.  *Id.* ¶ 45.  US Foods has incurred additional costs, losses, and expenses associated with handling, transporting, and storing the gloves.  *Id.* ¶ 46.

US Foods initiated this action on November 11, 2022, *see* ECF No. 1, and amended its complaint on January 10, 2023.  The amended complaint includes one claim for "breach of contract/warranty": US Foods alleged that Remcoda "breached the Contract,[3] and the express and implied warranties . . . , by failing to deliver to [US Foods] the [n]itrile gloves specified . . . , and instead delivering non-conforming vinyl gloves."  Am. Compl. ¶¶ 48–52.  Remcoda moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 36.

---

[3] The complaint defines "Contract" as including the Agreement, the Policy, and the twenty-seven purchase orders submitted thereunder.  Am. Compl. ¶ 25.

**DISCUSSION**

I.      Motion to Dismiss

      A.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions," and must provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The Court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

      B.  Breach of Contract

The Court rejects Remcoda's argument that the breach-of-contract claim must be dismissed on the grounds that (1) US Foods does not allege that it provided written notice that it was revoking its acceptance of the nonconforming gloves, and (2) the Delaware Uniform Commercial Code ("UCC") and the Policy each require express notice of revocation. *Id.*

For transactions involving the sale of goods under the Delaware UCC, "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it." 6 Del. C. § 2-608. Revocation "is not effective until the buyer notifies the seller of it." *Id.* The Delaware UCC does not specify the form that notice must take; rather, a buyer "notifies" a seller "by taking such steps as may be reasonably required to inform the [seller] in ordinary course." *Id.* § 1-202.

4

US Foods states that it "discovered the ground" for revocation in October 2021, when it received the test results indicating that the gloves were not nitrile.  Am. Compl. ¶ 40.  US Foods further alleges that it "notified" Remcoda that it was revoking acceptance shortly after, in November 2021, and that the parties discussed the test results several times by writing and telephone.  *Id.* ¶ 41.  Remcoda identifies no authorities applying Delaware law to a breach-of-contract claim to suggest that these facts are "insufficient to allege notice."  Def. Mem. at 6.  Instead, Remcoda relies on several inapposite deceptive-marketing cases alleging breaches of express warranty under New York law.  *See id.*[4]  These cases bear little resemblance to the instant action and do not defeat US Foods's contract claim.

Remcoda also contends that the Policy required US Foods to provide written notice of its revocation.  Def. Mem. at 5–6.  This argument also fails.  US Foods alleges that it did "discuss[] the test results, and the non-conforming nature of the gloves, [] in writing" with Remcoda.  Am. Compl. ¶ 41.  The Policy does not expressly require written notice if US Foods revokes acceptance of a shipment.  It provides that "any notice . . . which is required or permitted to be given to either party hereunder shall be in writing."  Policy § 14(i).  Other sections of the Policy specify situations where notice is "required or permitted"—if a product is recalled, for example, or if a force majeure compels a party to suspend performance.  *See id.* §§ 9, 14(d).  "Where one contract section omits a term present in another, the omission is presumed intentional."  *Torrent Pharma, Inc. v. Priority Healthcare Distribution, Inc.*, No. N18C-05-094, 2022 WL 3272421, at *9 & n.89 (Del. Super. Ct. Aug. 11, 2022).  Even if US Foods has not adequately pleaded that it gave written notice, therefore, this is not "fatal" to its contract claim.  Def. Mem. at 5.

---

[4] Citing *Petrosino v. Stearn's Prods., Inc.*, No. 16 Civ. 7735, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018); *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 307–08 (S.D.N.Y. 2023); and *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 282–83 (E.D.N.Y. 2021).

Finally, Remcoda argues that US Foods's "14-month delay in revoking acceptance is unreasonable as a matter of law and thus ineffective to state a breach of contract claim." Def. Mem. at 7; *see* 6 Del. C. § 2-608(2) (requiring that revocation "occur within a reasonable time after the buyer discovers or should have discovered the ground for it"). The timeliness of revocation is typically a "question of fact, not amenable to resolution on [a] motion to dismiss." *Livery Coach Sols., L.L.C. v. Music Express/E., Inc*., 245 F. Supp. 3d 639, 649 (D. Del. 2017). The factual disputes are particularly apparent here, where US Foods claims that the nonconforming nature of the gloves only became apparent in October 2021—not, as Remcoda contends, upon or shortly after receiving them. *Compare* Pl. Opp. at 11, ECF No. 41, *with* Def. Mem. at 8.

Accordingly, Remcoda's motion to dismiss the breach-of-contract claim is DENIED.

C.  Breach of Warranty

Remcoda also moves to dismiss US Foods's claims for breach of express and implied warranties. Def. Mem. at 9-12.

First, repeating its breach-of-contract argument, Remcoda contends that US Foods "failed to give notice in accordance with the" Policy that it considered the glove shipments to breach any warranty. *Id.* at 9. This argument fails for the reasons explained above: US Foods alleges that it did notify Remcoda of the test results in writing, and in any case, the Policy does not obligate US Foods to give such notice in any specific form. *See supra*.

Second, Remcoda argues that the express breach-of-warranty claim is duplicative of the breach-of-contract claim and must be dismissed. Def. Mem. at 10. As US Foods argues, a plaintiff may plead causes of action in the alternative. *See* Fed. R. Civ. P. 8(d)(2). However, "[a] court may decline to consider a claim that is identical to or redundant with another." *Osram Sylvania Inc. v. Townsend Ventures, LLC,* No. Civ. 8123, 2013 WL 6199554, at *6 & n.16 (Del. Ch. Nov. 19, 2013). Under Delaware law, an express-warranty claim is duplicative of a contract claim where

6

"[a]ny breach of an express warranty also would qualify as a breach of contract, . . . and the remedies available under either claim are equivalent." *Id.*[5]

Here, US Foods states that its contract claim is based on Remcoda's failure to "deliver products . . . that correspond to the products ordered," while its express-warranty claim is based on "Remcoda's representation that it could and would supply [US Foods] with the required quantity of nitrile gloves." Pl. Opp. at 18. These claims amount to the same contention: that Remcoda "fail[ed] to deliver to [US Foods] the [n]itrile gloves specified." Am. Compl. ¶ 50. The Court finds, therefore, that the express-warranty claim and breach-of-contract claims involve the same factual predicate and damages, and dismisses the former as duplicative of the latter. *Accord Sysco Merch. & Supply Chain Servs., Inc. v. Remcoda,* LLC, No. 22 Civ. 2075, 2023 WL 1781810, at *9 (S.D. Tex. Feb. 6, 2023) (holding that, under Texas law, "Sysco cannot proceed with an express warranty claim insofar as it is alleging that [Remcoda] warranted that the gloves would be made of nitrile").

The same is not true for US Foods's implied-warranty claim. US Foods argues that Remcoda has breached two separate implied warranties: the warrant of merchantability and the warrant of fitness for a particular purpose. Pl. Opp. at 20. On the former, under Delaware law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant." 6 Del. C. § 2-314(1). For goods to be "merchantable," they must "conform to the promises or affirmations of fact made on the container or label," among other things. *Id.* § 2-314(2)(f). Here, US Foods alleges that the gloves did not conform to the affirmation on the box "indicating that the box contained disposable [n]itrile gloves." Am. Compl. ¶ 29. Remcoda offers no response. Accordingly, Remcoda's motion to dismiss US Foods's claim for breach of the implied warranty of merchantability is DENIED. *Accord Sysco*, 2023 WL 1781810, at *10 (suggesting that implied-

---

[5] US Foods notes that *Osram Sylvania* "involved the sale of capital stock, not the sale of goods," so the Delaware UCC did not apply. Pl. Opp. at 17 n.7. It fails to explain, however, why this distinction means that "its holding has no relevance here." *Id.*

warranty claim would be viable if Sysco alleged the gloves "were improperly labeled, which is a[] way that a product can be unmerchantable").

Delaware law also recognizes "an implied warranty that the goods shall be fit" for a specific purpose.  6 Del. C. § 2-315.  The warranty arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."  *Id.*

Here, the complaint does not allege that US Foods "rel[ied] on [Remcoda's] skill or judgment to select or furnish suitable" gloves for food service workers.  *Id.*  On the contrary, it alleges that US Foods gave Remcoda clear orders to provide particular SKUs of nitrile gloves, leaving nothing to Remcoda's discretion.  *See* Am. Compl. ¶¶ 14, 20, 22; *compare* ECF No. 24-3 (purchase order), *with In re L.B. Trucking, Inc.*, 163 B.R. 709, 722 (Bankr. D. Del. 1994) (finding breach of implied warranty where plaintiff "relied on [defendant's] skill and judgment in selecting suitable herbicides to conduct no-till farming on his farms").  Accordingly, Remcoda's motion to dismiss US Foods's claim for breach of implied warranty of fitness for a particular purpose is GRANTED.

## CONCLUSION

Remcoda's motion to dismiss is DENIED as to US Foods's claims for breach of contract and implied warranty of merchantability.  The motion is GRANTED as to the claims for breach of express warranty and implied warranty of fitness for a particular purpose.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 36.

SO ORDERED.

Dated: March 15, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge

8